IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:16-CV-00679-FL

| | |
|---|---|
| **Robin Johnson**, | |
| Plaintiff, | |
| v. | **Order** |
| **North Carolina Department of Justice**, | |
| Defendant. | |

The Federal Rules leave the discovery process largely in the hands of the litigants. Thus, the courts depend on the parties to exchange documents and information in a manner that is consistent with the Rules and works towards "the just, speedy, and inexpensive" resolution of disputes. Fed. R. Civ. P. 1.

But often, as it has here, the discovery process breaks down because one or both parties fail to follow the Federal Rules. This breakdown can occur for any number of reasons including a lack of knowledge of the Rules' requirements, a willful refusal to follow the Rules, or simply because the parties do not like each other. Whatever the reason, the failure of parties to follow the Federal Rules often results in increased costs, delays in litigation, and increased acrimony between litigants. None of these outcomes benefit the parties, the courts, or the interests of justice.

Before the court are two discovery motions that reflect all these negative aspects of discovery. The North Carolina Department of Justice claims that Johnson failed to attend her properly noticed deposition without justification. And Johnson claims that NCDOJ obstructed the discovery process by responding to her written discovery requests with inappropriate objections and evasive answers.

Both parties are adept at seeing the speck in the other's eye without noticing the log in their own. The Federal Rules do not allow Johnson to decide unilaterally if she will attend her deposition. And NCDOJ's responses violated the Federal Rules in several ways, including the use of boilerplate objections, referencing an outdated standard for the scope of discovery, failing to state whether NCDOJ was withholding responsive documents based on an objection, failing to produce a privilege log, and raising an inappropriate objection to contention interrogatories. Thus, the court will grant the parties' motions and impose sanctions on both sides.

## I.    Background

Plaintiff Robin Johnson alleges that beginning in 2008 and for several years afterwards her supervisors in the Human Service Section (formerly known as the Medical Facilities Section) at NCDOJ, Richard Slipsky and Robert Lodge, made derogatory and racist comments to her and otherwise created a hostile working environment. Second Am. Compl. ¶¶ 15–26, D.E. 29. In late 2013, Johnson confided in a new co-worker, Josephine Tetteh, about her supervisors' conduct and asked Tetteh to help her contact an attorney. *Id.* ¶¶ 31, 32. Together Tetteh and Johnson wrote a letter that Johnson sent to an attorney. *Id.* ¶ 33.

Johnson eventually filed a charge of discrimination with the Equal Employment Opportunity Commission in December 2013 alleging that NCDOJ subjected her to discrimination because of her race and sex. D.E. 25–2. The EEOC notified Slipsky and Lodge about Johnson's complaint in January 2014, and they allegedly became "furious" with her. Second Am. Compl. ¶ 37.

Two months after he received notice from the EEOC about Johnson's claims, Slipsky elevated Tetteh to be Johnson's supervisor. *Id.* ¶ 38. Tetteh immediately began giving Johnson

additional work, much of which belonged to others; and when she complained, Tetteh asked her if she was refusing to do her job. *See id.* ¶¶ 40–42, 44, 47–48.

Johnson also asked Tetteh for a pay raise. *Id.* ¶ 43. But Tetteh denied her requests, despite a newer paralegal, a Caucasian female, allegedly receiving two raises after Johnson's request. *Id.* ¶¶ 43, 51, 62.

Johnson received her Notice of Right to Sue Letter from the EEOC in December 2014. D.E. 25–6. She filed a new charge of discrimination with the EEOC on the same day alleging that Tetteh's actions against her were a form of retaliation for filing her earlier EEOC charge. D.E. 25–7. Johnson received another Notice of Right to Sue Letter from the EEOC in April 2016. D.E. 25–8.

Shortly thereafter, Johnson filed her original complaint in this court. D.E. 1. NCDOJ asked the court to dismiss Johnson's complaint, but the court ultimately allowed her to proceed with a Title VII retaliation claim against NCDOJ. D.E. 26, 27.

After resolving the scope of Johnson's claims, the parties engaged in various types of discovery. The motions currently before the court relate to disputes over Johnson's failure to appear at her deposition and the sufficiency of NCDOJ's responses to Johnson's discovery requests. The court held a hearing on the motions[1] at which time the court addressed both the merits of the motions and whether the court should subject one or both parties to sanctions for their conduct.

The court will address the facts related to each of these controversies separately.

---

[1] Assistant Attorney General Jason Rosser represented NCDOJ at the hearing. Senior Deputy Attorney General Amar Majmundar, who has appeared on NCDOJ's behalf, did not attend the hearing.

## A. NCDOJ's Attempt to take Johnson's Deposition

NCDOJ began its attempts to schedule and take Johnson's deposition on March 21, 2018. Assistant Attorney General Jason Rosser reached out to Johnson to ask if she would be available for a deposition during the first week of April. Email from Jason Rosser to Robin Johnson (Mar. 21, 2018, 4:47 p.m.), D.E. 40–1 at 8. Two days later, presumably after having not received a response, Rosser followed up with Johnson and again asked about her availability during the first week of April. Email from Jason Rosser to Robin Johnson (Mar. 23, 2018, 9:15 a.m.), D.E. 40–1 at 8. Johnson responded a few days later and said that she would not be available during the first week of April. Email from Robin Johnson to Jason Rosser (Mar. 26, 2018, 11:01 a.m.), D.E. 40–1 at 13. After some additional back and forth, Johnson and Rosser eventually settled on April 11, 2018, as the date for her deposition. Email from Jason Rosser to Robin Johnson (Mar. 26, 2018, 1:31 p.m.), D.E. 40–1 at 8. Rosser then served Johnson with a Notice of Deposition setting the deposition for the agreed upon date. D.E. 40–1.

Two days before the deposition, Johnson emailed Rosser and told him that she would not be appearing at the deposition. Email from Robin Johnson to Jason Rosser (Apr. 9, 2018, 5:34 p.m.), D.E. 40–1 at 21. Rosser responded by telling her that he would proceed with the deposition and asked her to explain why she intended to skip the deposition. Email from Jason Rosser to Robin Johnson (Apr. 10, 2018, 9:23 a.m.), D.E. 40–1 at 19. Johnson explained that she would not attend because of an ongoing dispute over NCDOJ's discovery responses and that he could "reschedule the deposition after the Judge has made a ruling on [her] Motion to Compel." Email from Robin Johnson to Jason Rosser (Apr. 10, 2018, 10:00 a.m.), D.E. 40–1 at 20.

True to their promises, Rosser convened the deposition shortly after 9:00 a.m. on April 11, 2018, and Johnson did not appear. Deposition Tr., D.E. 40–1 at 1–7. After making a brief record

about the events that led up to Johnson not appearing, Rosser adjourned the deposition. *Id.* NCDOJ paid $240 for an expedited transcript of the deposition. D.E. 40–2. The invoice NCDOJ submitted with its motion shows that the court reporter would have charged only $160 if NCDOJ had not requested an expedited transcript. *Id.* A few days later, NCDOJ filed a motion asking the court to sanction Johnson and require her to appear at a deposition. D.E. 39.

### B. Johnson's Attempts to Confer with NCDOJ about her Concerns over its Responses to her Discovery Requests.

Amid the attempts to schedule and take Johnson's deposition, Johnson was trying to address what she perceived to be deficiencies with NCDOJ's discovery responses. Johnson first reached out to counsel for NCDOJ about its responses on March 26, 2018, about two weeks after NCDOJ served its responses on her. She wrote to Senior Deputy Attorney General Amar Majmundar, who had been handling her case (and signed the discovery responses at issue), to ask him if Rosser was now handling her case because he had been emailing her. She told Majmundar that she needed to know who was handling her case because she "want[ed] to schedule a conference concerning the objections in [her] document requests and interrogatories with the attorney representing DOJ." Email from Robin Johnson to Amar Majmundar (Mar. 26, 2018, 8:54 a.m.), D.E. 41–3 at 7.

About two hours after Majmundar told Johnson that Rosser would be handling her case, she reached out to Rosser by email. Email from Robin Johnson to Jason Rosser (Mar. 26, 2018, 11:01 a.m.), D.E. 41–3 at 6. She told Rosser that she "would like to schedule a conference [about] the objections to [her] interrogatories and document requests" and asked him when he would be available. *Id.* Rosser responded shortly thereafter, but rather than provide times when he would be available to talk, his sole response to her request was that she should "itemize any questions related to prior counsel's responses to [her] discovery requests and send them to [him] for review." Email

from Jason Rosser to Robin Johnson (Mar. 26, 2018, 11:45 a.m.), D.E. 41–3 at 5. Johnson again asked Rosser when he would be available to talk. Email from Robin Johnson to Jason Rosser (Mar. 26, 2018, 12:18 p.m.), D.E. 37–1 at 3. Nothing in the record reveals that Rosser responded to her inquiry on this point.

After exchanging emails about other matters, Johnson told Rosser that he should "review all of the interrogatories and document requests" because "[p]rior counsel objected to all of them." Email from Robin Johnson to Jason Rosser (Mar. 26, 2018, 1:27 p.m.), D.E. 41–3 at 3. She then asked Rosser when he was available to discuss the matter. *Id.* There is no indication that Rosser ever responded to her request. Johnson asked the court to require NCDOJ to provide adequate responses to her discovery requests two weeks later. D.E. 37.

## II.      NCDOJ's Motion Regarding Johnson's Failure to Appear at Her Deposition

NCDOJ asks the court to dismiss Johnson's remaining claim and require her to pay the costs associated with the April 2018 deposition because of her failure to attend. Johnson justifies her failure to appear by claiming that NCDOJ was not honoring its discovery obligations. Regardless of NCDOJ's shortcomings in responding to her requests, the Federal Rules do not allow a party to decide unilaterally that they will not attend a properly noticed deposition. Thus, the court will order Johnson to attend a deposition and require her to pay a portion of the costs related to the April 2018 deposition.

The Federal Rules of Civil Procedure provide that "[a] party may, by oral questions, depose any person, including a party, without leave of court[.]" Fed. R. Civ. P. 30(a)(1). A party wishing to take a deposition must "give reasonable written notice to every other party." *Id.* 30(b)(1). The deposition notice must state the time and location of the deposition, along with the name and

address of the deponent and the method that the party taking the deposition will used to record the testimony. *Id.* 30(b)(1) & (3)(A).

The Rules go on to explain that if a party "fails, after being served with proper notice, to appear for" their deposition, the court may impose sanctions against the offending party. *Id.* 30(d)(1)(A)(i). The court has several sanctions at its disposal, including the ability to "dismiss[] the action … in whole or in part." *Id.* 30(d)(3) & 30(b)(2)(A). At the very least, the court must require the offending party or its attorney to "to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." *Id.* 30(d)(3).

It is uncontested that NCDOJ properly noticed Johnson's deposition for the morning of April 11, 2018.[2] Mem. in Supp. of Mot. for Sanctions Ex. 4, D.E. 40–1 at 17. Instead she tries to justify her failure to appear by pointing to NCDOJ's inadequate discovery responses and the refusal of NCDOJ's attorneys to discuss her concerns about the responses. Resp. to Mot. for Sanctions at 3–4, D.E. 43.

The Federal Rules of Civil Procedure do not allow a party to decide whether they want to attend a properly-noticed deposition, even if another party is failing to live up to its discovery obligations. A party wishing to put off a deposition must either work out an agreement with the party that noticed the deposition or seek a protective order from the court. Johnson's failure to appear violated the Federal Rules, and the court will require her to appear for a deposition.

As noted above, the court must also consider what sanctions to impose for Johnson's actions. NCDOJ hopes to use Johnson's conduct as a springboard to victory. In addition to asking

---

[2] The court notes that the Notice of Deposition fails to state the way NCDOJ planned to record the deposition as required by Rule 30(b)(3)(a). Because Johnson did not object to this omission, the court will not find that it renders the Notice invalid or improper, but it reflects a lack of attention to the Federal Rules by NCDOJ's attorneys.

the court to require her to pay the costs for her April 2018 deposition, it also asks the court to dismiss Johnson's complaint or strike her retaliation claim.

Dismissal of a complaint or the striking of a claim are extreme sanctions that courts should reserve for extreme conduct. Johnson's conduct here, particularly when considering her pro se status, does not rise to this level. The court also believes that, given her pro se status and limited resources, justice requires that the court limit the sanction to the regular fee that the court reporter would have charged for the transcript if NCDOJ had not requested expedited processing. Johnson must thus reimburse NCDOJ for the $160 fee within 90 days from the date of entry of this order.

### III.    Johnson's Motion to Compel Regarding NCDOJ's Discovery Responses

The other dispute before the court relates to the sufficiency of NCDOJ's responses to Johnson's discovery requests. She argues that NCDOJ failed "to provide meaningful responses" to her requests. Mot. to Compel at 2, D.E. 37. She believes that the responses consist of boilerplate or otherwise inapplicable objections and "incomplete and evasive" responses. *Id.* NCDOJ calls this a mischaracterization of its responses and claims that Johnson's requests are excessive and seek irrelevant information. Resp. to Mot to Compel. at 1–2, D.E. 41.

Despite NCDOJ's protests, Johnson is correct and is entitled to have her motion granted. NCDOJ often relied on boilerplate objections to avoid responding to Johnson's requests. It also inappropriately claimed that it did not have to respond to Johnson's contention interrogatories based on the work-product doctrine—a position numerous courts have rejected. Several of its objections also relied on an outdated, and thus inapplicable, definition of the scope of discovery allowed under Rule 26. And it withheld documents from employee personnel files based on a confidentiality objection without providing a privilege log and without producing records that appear to fall outside the scope of confidentiality provided under North Carolina law. NCDOJ

objects to Johnson's requests on a few other grounds that the court will not consider because NCDOJ waived them by not including them in their discovery responses. Thus, the court will grant the motion to compel and, because of NCDOJ's repeated violations of the Federal Rules, impose sanctions under Rule 26(g) on the attorney who signed the responses.

### A. Motions to Compel

The Federal Rules allow parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). The Rules also provide several tools to conduct discovery, including interrogatories and requests for production of documents. *See id.* 30–36.

Inevitably, disagreements arise about whether a party has adequately responded to a discovery request and whether the response complies with the Rules' requirements. In such a circumstance, the requesting party may ask the court to compel the responding party to comply with the Rules. *Id.* 37(a). The party resisting or objecting to discovery "bears the burden of showing why [the motion to compel] should not be granted." *Mainstreet Collection, Inc.* v. *Kirklands, Inc.*, 270 F.R.D. 238, 241 (E.D.N.C. 2010). To meet this burden, the non-moving party "must make a particularized showing of why discovery should be denied, and conclusory or generalized statements fail to satisfy this burden as a matter of law." *Id.* With this standard in mind, the court turns to its analysis of Johnson's motion.

### B. Good Faith Effort to Resolve the Discovery Dispute

NCDOJ claims that the court should deny Johnson's motion to compel without considering its merits because she failed to satisfy the requirement in both the Federal Rules and the court's local rules related to conferring in good faith to resolve a dispute before moving to compel. The Federal Rules require that any motion to compel "must include a certification that the movant has

in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1). Similarly, the court's local rules require that "[c]ounsel must also certify that there has been a good faith effort to resolve discovery disputes prior to the filing of any discovery motions."[3] Local Civil Rule 7.1(c)(2).

NCDOJ argues that although Johnson included the certification required by Rule 37(a), she did not engage in a good faith effort to resolve the dispute before filing her motion. It faults her for not providing information Rosser requested about her concerns with NCDOJ's discovery responses and for failing to provide a date to meet and confer.

But NCDOJ's arguments ignore Johnson's repeated attempts to set up a conference and its own attorneys' conduct. The record reflects that Johnson made several attempts to set up a time to talk with attorneys from NCDOJ about her discovery concerns. NCDOJ never suggested any times for the meeting. Instead, it demanded that Johnson itemize her concerns in writing. While such an itemized list might help facilitate a discussion over discovery issues, the Federal Rules do not entitle NCDOJ to such a list, and thus it was not entitled to refuse to speak with Johnson about her concerns on that basis.

And the record reflects that Johnson provided additional details about her concerns with NCDOJ's responses. She informed Rosser that he would need to review every response to her interrogatories and requests for production of documents because NCDOJ had objected to each one. This email, while not breaking down her concerns in detail, was enough to provide NCDOJ with notice of the general nature of the issues she wanted to discuss. Even after this response,

---

[3] The use of the term "counsel" in the local rule suggests that it only applies to attorneys and not pro se litigants like Johnson. But considering the court's ruling, it need not address this issue in detail.

NCDOJ did not respond to Johnson's request for times when its attorneys could speak with her further.

Johnson certainly could have provided additional details about her concerns, but the lion's share of the fault for the failure of the parties to meet and confer falls upon NCDOJ and its counsel. NCDOJ ignored Johnson's repeated requests to set up a time to meet and confer. It failed to respond to Johnson's requests to meet even after she provided additional (although sparse) details about the concerns she had with its discovery responses.

Although litigation is an adversarial process, litigants and attorneys should always look for opportunities to work together to achieve the Federal Rules' goal of ensuring "the just, speedy, and inexpensive determination of every action." Fed. R. Civ. P. 1. This is particularly true when it comes to routine maters, like scheduling discovery conferences, where acting cooperatively presents no risk of compromising a client's interests.

The court finds that Johnson made a good faith attempt to confer with NCDOJ before moving to compel. Thus, the court will decline NCDOJ's invitation to deny the motion on this ground and will, instead, address the motion on the merits.

### C.  Lack of Specific Objections

Johnson begins by arguing that NCDOJ's responses are inadequate because it failed to state its objections to her discovery requests with the level of specificity required by the Federal Rules. NCDOJ does not specifically address this claim in its response. After reviewing the objections in NCDOJ's responses, the court agrees with Johnson that the objections are inadequate and thus finds them to be waived.

If a responding party wishes to object to an interrogatory or a request for production of documents, they must do so with specificity. Fed. R. Civ. P. 33(b)(2)(B) ("The grounds for

objecting to an interrogatory must be stated with specificity.") & 34(b)(2)(B) (requiring a party to "state with specificity the grounds for objecting to the request, including the reasons"). By now it has long been the rule in this district that "'[m]ere recitation of the familiar litany that an interrogatory or a document production request is overly broad, burdensome, oppressive, and irrelevant' does not suffice as a specific objection." *Mainstreet Collection*, 270 F.R.D. at 240 (quoting *Momah* v. *Albert Einstein Med. Ctr.*, 164 F.R.D. 412, 417 (E.D. Pa. 1996)). The failure to state an objection with specificity results in a waiver of the objection. *Silicon Knights, Inc.* v. *Epic Games, Inc.*, 917 F. Supp. 2d 503, 533 (E.D.N.C. 2012) (citing cases).

NCDOJ's responses contain several objections that fail to satisfy the Federal Rules' specificity requirement. In response to each of Johnson's interrogatories and many of her requests for production of documents, NCDOJ asserted with no further explanation that the request was vague, overbroad, ambiguous, unintelligible, or some combination thereof. Interrogs. 1–17, D.E. 41–2; Reqs. for Produc. 1–7, 13, 14, 22, 24, 25, D.E 41–2. The repeated use of boilerplate objections with no explanation about why the responding party believed a request to be objectionable violates the Federal Rules' specificity requirement and results in a waiver of the objections. Johnson's motion to compel is granted on this point.

Although not part of Johnson's motion, the court notes that the Federal Rules place two additional requirements on a party that objects to a request for production of documents. The Rules require the objecting party to "state whether any responsive materials are being withheld on the basis of that objection." Fed. R. Civ. P. 34(b)(2)(C). And they also require that if the objection applies only to a portion of the request, the objection "must specify the part and permit inspection of the rest." *Id.* The goal of these provisions is to "end the confusion that frequently arises when a producing party states several objections and still produces information, leaving the requesting

party uncertain whether any relevant and responsive information has been withheld on the basis of the objections." *Id.* (2015 Advisory Committee Notes). NCDOJ's responses did not comply with these requirements, but it must ensure that any supplemental discovery responses do so.

### D. Objections to Contention Interrogatories

Johnson next challenges NCDOJ's refusal to answer several of her contention interrogatories. Once again, NCDOJ did not specifically respond to her argument on this point. As the Federal Rules authorize the use of contention interrogatories and NCDOJ has not justified its failure to respond adequately, the court will grant Johnson's motion on this issue.

The Federal Rules allow parties to serve an interrogatory that "asks for an opinion or contention that relates to fact or the application of law to fact[.]" Fed. R. Civ. P. 33(a)(2). This type of request, known as a contention interrogatory, asks a party to do one or more of the following "(1) state its contentions or clarify whether it is making a contention, (2) articulate the facts underlying a contention, (3) assert a position or explain that position in relation to how the law applies to the facts, and (4) explain the legal or theoretical basis behind a contention." *Capacchione* v. *Charlotte-Mecklenburg Sch.*, 182 F.R.D. 486, 489 (W.D.N.C. 1998).

Johnson repeatedly asked NCDOJ to provide the facts and other information that underlie its denial of the allegations in her Complaint.[4] In its responses to her requests, NCDOJ often responds that because it has denied the allegation in the Complaint, the alleged conduct did not occur and thus there are no facts to provide to Johnson.

---

[4] The court notes that over the course of 17 interrogatories Johnson asks NCDOJ to provide the facts that support its denial of allegations in dozens of paragraphs from her Second Amended Complaint. NCDOJ certainly could have made plausible argument that the court should consider each paragraph to be a separate interrogatory and find that Johnson exceeded the number of interrogatories allowed under the Case Management Order. But as discussed below, NCDOJ waived this issue by not including it as an objection in its responses.

But presuming that NCDOJ's attorneys complied with Rule 11, their position cannot be correct. When an attorney signs an answer denying a complaint's factual allegations, the attorney is certifying, among other things, that "to the best of the [attorney's] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances … the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information." Fed. R. Civ. P. 11(b) & (b)(4). Thus, there must be some factual support for the denials in NCDOJ's answer.

A closer inspection of NCDOJ's Answer to the Second Amended Complaint shows that it would be reasonable to expect that there are specific facts related to its denials. For example, one of Johnson's requests asks that NCDOJ "state all facts … upon which you deny the Plaintiff's contention, as set forth in Paragraph 38–49 of the Second Amended Complaint that Defendants subjected Plaintiff to a systematic, continuous, and pervasive pattern of retaliation and harassment[.]" Interrog. 3, D.E. 41–2 at 4. Among the items Johnson asks NCDOJ to address is Paragraph 41 of the Second Amended Complaint. That paragraph discusses a conversation that allegedly occurred in April 2014 between Johnson and Tetteh about a new job responsibility. Second Am. Compl. ¶ 41. Johnson claims that she told Tetteh that another employee was responsible for that task. *Id.* Johnson claims that Tetteh then said, "[A]re you telling me that you are not going to do the job?" *Id.* In its Answer, NCDOJ denies this paragraph in its entirety. Answer to Second Am. Compl. ¶ 41, D.E. 30.

There are any number of reasons that NCDOJ may have denied the allegations in Paragraph 41. Perhaps NCDOJ has reason to believe that the conversation never took place. Or perhaps it believes that a conversation like the one that Johnson describes occurred, but it disputes Johnson's recollection of events. Or perhaps NCDOJ has reason to believe that the conversation occurred,

14

but that it was not Johnson's supervisor who was involved in the conversation. In any event, Johnson has a right to know the facts that underlie this denial as she prepares her case.

One portion of one sentence in NCDOJ's response to Johnson's motion appears to assert that the work-product doctrine bars Johnson from obtaining this information. D.E. 41 at 7. Although the issue is only mentioned in passing and is unsupported by a citation to any case law, the court will briefly address this issue because of the importance of the work-product doctrine.

The Supreme Court announced the attorney work-product doctrine in *Hickman* v. *Taylor*, 329 U.S. 495 (1947), and it is now codified as part of Rule 26 of the Federal Rules of Civil Procedure. The Rule provides that as a general matter, "a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative[.]" Fed. R. Civ. P. 26(b)(3)(A). But the court may allow a party to obtain materials that qualify as work product if "they are otherwise discoverable" and "the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." *Id.* 26(b)(3)(A)(i) & (ii). If a court finds that it is appropriate to require production of work product, it "must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." *Id.* 26(b)(3)(B).

The 1970 Advisory Committee Notes, which accompanied the addition of contention interrogatories to the Federal Rules, recognize that there could be circumstances where the work-product doctrine and contention interrogatories are in tension. Fed. R. Civ. P. 26 (1970 Advisory Committee Notes). The Notes acknowledge that in responding to contention interrogatories, "a party and his attorney or other representative may be required to disclose, to some extent, mental impressions, opinions, or conclusions." *Id.* But the party or attorney are "entitled to keep

confidential documents containing such matters prepared for internal use." *Id.* The Advisory Committee Notes track the Supreme Court's statement in *Hickman* that "[a] party clearly cannot refuse to answer interrogatories on the ground that the information sought is solely within the knowledge of his attorney." 329 U.S. at 504.

Given this background, courts do not, as a general matter, allow a party to use the work-product doctrine to avoid answering contention interrogatories. *Oklahoma* v. *Tyson Foods, Inc.*, 262 F.R.D. 617, 627–31 (N.D. Okla. 2009) (citing cases). *Accord Illinois Union Ins. Co.* v. *La. Health Serv. & Indem. Co.*, No. 16–16604, 2017 WL 2955355, at *2 (E.D. La. Apr. 13, 2017); *Johnson Marcraft, Inc.* v. *W. Sur. Co.*, No. 3:15-CV-01482, 2016 WL 3655299, at *5 (M.D. Tenn. July 8, 2016); *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 281 F.R.D. 1, 4 (D.D.C. 2011). Both before and after the 1970 amendments, courts have "consistently held that the work product concept furnished no shield against discovery, by interrogatories or by deposition, of the facts that the adverse party's lawyer has learned, or the persons from whom he or she had learned such facts[.]" 8 Charles A. Wright, *et al.*, *Fed. Practice & Procedure* § 2023 (3d ed. 1998). This proposition is "well-settled," *Terry* v. *Cty. of Milwaukee*, No. 17-CV-1112, 2018 WL 1411234, at *3 (E.D. Wisc. Mar. 21, 2018), and some courts have gone so far as to describe a work-product objection to a contention interrogatory as "frivolous[,]" *Alexander* v. *BF Labs Inc.*, Case No. 14–2159-KHV, 2015 WL 4463634, at *4 (D. Kan. July 21, 2015).

NCDOJ has offered no reason the court should depart from this general rule. Thus, the court will grant Johnson's Motion to Compel related to the contention interrogatories. But as discussed in more detail below, the court is exercising its inherent authority to restrict the scope of discovery to retaliatory conduct that allegedly occurred between April 1, 2014, and November 1, 2014, as described in Johnson's second EEOC Charge. Thus, NCDOJ must supplement its

responses to Interrogatories 1–10 and 15–17 to specify the material facts and identify relevant witnesses and documents that support its denials of the factual allegations in each of the specified paragraphs from the Second Amended Complaint. NCDOJ need not provide any additional information regarding Paragraphs 54–61 in the Second Amended Complaint as those allegations are no longer part of the claims in this case. NCDOJ's must include all the responsive information in its interrogatory responses and may not refer Johnson to other pleadings or documents filed in this action. *See* Fed. R. Civ. P. 33 ("Each interrogatory must … be answered separately and fully in writing under oath.").

### E.  Relevancy Objection

Johnson also opposes NCDOJ's relevancy objections to several of her requests for production.[5] NCDOJ did not respond to her argument on this point. Upon review of NCDOJ's relevancy objection, the court notes that its objections are improper because they are not based on the current scope of discovery described in the Federal Rules. NCDOJ also failed to state whether it was withholding any documents based on these objections. Thus, the court will grant Johnson's motion to compel on this issue and order NCDOJ to supplement its responses to the requests for production (as modified by the court) if it has any responsive documents in its possession, custody, or control.[6]

The Federal Rules of Civil Procedure spell out, in general terms, the appropriate scope of discovery. After the 2015 Amendments, the Rules provide that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1).

---

[5] Johnson claims that NCDOJ made inappropriate relevancy objections to Requests for Production 1, 2, 6, 7, 10, 11, 12, 13, 15, 17, 18, 19, 20, 21, and 22. Mot. to Compel at 29, D.E. 37.
[6] NCDOJ's responses often did not reveal whether it withheld any documents based on these objections.

The 2015 Amendments deleted the provision that defined relevant information as "information that appears 'reasonably calculated to lead to the discovery of admissible evidence[.]'" Fed. R. Civ. P. 26 (2015 Advisory Committee Notes). This provision had "been used by some, incorrectly, to define the scope of discovery." *Id.*

Also absent from Rule 26 after the 2015 Amendments is the "provision authorizing the court, for good cause, to order discovery of any matter relevant to the subject matter involved in the action." *Id.* The Amendments removed this provision because the requirement that courts are supposed to restrict discovery to relevant matters proportional to the needs of the case subsumed it. *Id.*

Although no longer part of the Federal Rules, objections based on the assertion that a request is not relevant to the subject matter of the litigation or that the request is not reasonably calculated to lead to the discovery of admissible evidence often appear in NCDOJ's responses. As NCDOJ has not stated valid objections to Johnson's requests for production (and even if they were valid, NCDOJ did not state them with particularity), the court overrules them and orders NCDOJ to supplement its responses.

Even without an objection, the court retains the authority to control the scope of discovery that parties may pursue. Rule 26(b)(2) provides that a court "must limit the frequency or extent of discovery" if it determines, among other things, that "the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(B) & (b)(2)(B)(iii). In other words, the court may restrict discovery if it determines that some requests are not relevant to any party's claim or defense or are not proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1).

After reviewing Johnson's requests for production of documents, the court notes that several of them relate to matters that are no longer at issue or are otherwise disproportional to the

needs of the case. The court will exercise its authority to modify these requests for production to bring them within proper scope of discovery: matters relevant to the allegation that NCDOJ retaliated against Johnson for filing her first EEOC Charge. According to Johnson's second EEOC Charge, this retaliation took the form of assigning her additional responsibilities at work. D.E. 29-7. Johnson's second EEOC Charge alleges that NCDOJ retaliated against her by giving similarly situated white or Caucasian workers received pay raises but denying her a pay increase. *Id.* It is also appropriate to delve into prior allegations of discrimination against relevant individuals because it may have impacted their incentive to retaliate against Johnson. The time frame for most, but not all, of the discovery will be limited to the period between April 1, 2014, and November 1, 2014, that Johnson listed on her charge of discrimination filed with the EEOC.[7] *Id.* The court has included the modified requests for production in the appendix to this order.

### F. Objections Regarding Personnel Files

In response to several of Johnson's requests for production, NCDOJ objects to producing responsive documents because the request "seeks personnel files that are privileged and confidential and not public documents." *See* Resp. to Req. for Produc. 15, 18, 19, 20, 21, D.E. 41–2. Johnson claims that NCDOJ's objections are meritless. While the objections are not completely meritless, the applicable law allows NCDOJ to produce some personnel records upon request and any personnel records if the court orders their disclosure. The court will thus require NCDOJ to supplement its responses to the requests for production (as modified by the court) if it has any responses in its possession, custody, or control.

The court begins its analysis of this issue by noting, once again, that NCDOJ's responses fail to state whether it withheld any responsive documents based on this objection. If NCDOJ did,

---

[7] The court notes that Johnson did not check the "Continuing Action" box on the form which would have indicated ongoing retaliation or harassment.

in fact, withhold documents based on some sort of privilege, it had to produce a privilege log that contains sufficient information to allow the requesting party and the court to assess the validity of its claim. Fed. R. Civ. P. 26(b)(5)(A). By all indications, NCDOJ violated this requirement of the Federal Rules as well.

Turning to the merits of this issue, neither NCDOJ's discovery responses nor its response to Johnson's motion to compel cite any law in support of its assertion of confidentiality. While the failure to provide any support for its position would be sufficient grounds to overrule the objections, the court will presume that NCDOJ is relying on North Carolina law that regulates public access to a state employee's personnel file.

The North Carolina General Statutes make some aspects of a state employee's personnel file confidential and leave other portions open for public inspection. Among the items that are available to the public are the employee's name, date of birth, salary, position or title, the dates and reasons for of various employment-related actions, and some records related to employee discipline. N.C. Gen. Stat. § 126–23(a). Otherwise, "[a]ll other information contained in a personnel file is confidential and shall not be open for inspection and examination except to the" extent allowed by law. *Id.* § 126–24.

Curiously, NCDOJ objected on confidentiality grounds to a few requests that, at least in part, ask for information that North Carolina law leaves open to public inspection. For example, in Request for Production 18 Johnson asks NCDOJ to produce "the complete salary and wage records, payroll records, commission records[,] and W-2 forms" for all NCDOJ employees who held the same position she did. D.E. 41–2 at 24. Records about a state employee's current salary and the date and amount of past increases or decreases in salary are "open for inspection" under

North Carolina law. N.C. Gen. Stat. § 126–23(a)(7) & (a)(8). NCDOJ has not explained how its confidentiality objection applies to documents containing this type of information.

Similarly, Johnson seeks various kinds of disciplinary records for several people. North Carolina law provides that the "[d]ate and type" of an employee's "dismissal, suspension, or demotion for disciplinary reasons" will be open for public inspection. *Id.* § 126–23(a)(11). Yet NCDOJ objected to these requests as privileged and confidential without producing the types of documents that North Carolina law allows it to produce or stating that responsive documents do not exist. *See, e.g.*, Resp. to Req. for Produc. 11, D.E. 41–2 at 21–22

In any event, North Carolina law provides that pursuant to a court order "[a] party … may inspect and examine a particular confidential portion of a State employee's personnel file[.]" N.C. Gen. Stat. § 126–24(4). The court has determined that some personnel records Johnson has requested are relevant to her remaining claim and proportional to the needs of the case. The relevant records include documents related to prior allegations of discrimination and retaliation against some individuals and records related to the compensation of certain individuals who were similarly situated to Johnson. Thus, NCDOJ must supplement its responses to the requests for production (as modified by the court) if it has any responsive documents in its possession, custody, or control.

### G. Argument that Johnson Exceeded the Allowable Interrogatories

Although not an issue Johnson raised in her motion to compel, NCDOJ spent multiple pages in its response arguing that Johnson served more interrogatories than the Federal Rules allowed. The relevant provision provides that "[u]nless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts." Fed. R. Civ. P. 33(a)(1). NCDOJ then goes on to explain how Johnson's

interrogatories contain several subparts that qualify as separate interrogatories and that when the court considers these subparts, Johnson has exceeded the 25-interrogatory limit by the time she reached her ninth interrogatory.

Whatever the merits of its position, NCDOJ has waived this argument by failing to include this objection in its discovery responses. Fed. R. Civ. P. 33(b)(4) ("Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure."). The omission is particularly glaring since NCDOJ included an objection asserting that Johnson exceeded the number of requests for production authorized by the Case Management Order. D.E. 41–2 at 2–3. The court finds that NCDOJ has waived this objection, and thus it provides no basis for NCDOJ to avoid answering Johnson's interrogatories.

### H. Sanctions for Improper Objections

The Federal Rules require that "every discovery request, response, or objection must be signed by at least one attorney of record in the attorney's own name[.]" Fed. R. Civ. P. 26(g)(1). The attorney's signature serves as a certification that, among other things, any objections raised are "consistent with [the federal] rules and warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law, or for establishing new law[.]" *Id.* 26(g)(1)(B)(i). If an attorney "violates this rule without substantial justification, the court, on motion or on its own, must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both." *Id.* 26(g)(3).

A party can violate Rule 26(g) simply by violating one portion of the Federal Rules. For example, a court has explained that "the very act of making … boilerplate objections is *prima facie* evidence of a Rule 26(g) violation" because it reflects that the attorney either failed to make a reasonable inquiry into whether there were facts to support the objection or violated the Federal

22

Rules' requirement to state the facts supporting an objection. *Mancia* v. *Mayflower Textile Servs. Co.*, 253 F.R. D. 354, 359 (D. Md. 2008).

Yet here the court is confronted with many objections that are inconsistent with the Federal Rules. To recap, NCDOJ's discovery responses violated the Federal Rules in these ways:

- Repeated use of non-specific, boilerplate objections in violation of Rules 33(b)(4) and 34(b)(2)(B).

- Repeated failure to state whether responsive materials were being withheld based on objections to requests for production of documents as required by Rule 34(b)(2)(C).

- Repeatedly making objections based on an outdated version of the scope of discovery provided in Rule 26(b)(1).

- Failing to produce a privilege log describing responsive documents withheld because of a privilege as required by Rule 26(b)(5).

- Objecting to contention interrogatories seeking the description of supporting facts based on a work-product objection.

Furthermore, NCDOJ has not argued or shown that it made its objections as part of a "nonfrivolous argument for extending, modifying, or reversing existing law, or for establishing new law[.]" Rule 26(g)(1)(B)(i). Both its written submission and its counsel's arguments at the hearing on Johnson's motion failed to provide any justification, let alone a substantial justification, for its approach to discovery. Thus the court finds that NCDOJ's repeated failure to comply with the Federal Rules violates Rule 26(g).

Given NCDOJ's violation of Rule 26(g), the court must consider what sanction to impose on the attorney who signed the objections. Fed. R. Civ. P. 26 (1983 Advisory Committee Notes) (explaining that "Rule 26(g) makes explicit the authority judges now have to impose appropriate

sanctions and requires them to use it."). The Advisory Committee Notes explain that "[t]he nature of the sanction is a matter of judicial discretion to be exercised in light of the particular circumstances." *Id.* The goal of sanctions under Rule 26(g) is "'not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to [engage in] such conduct in the absence of such a deterrent.'" *Id.* (quoting *Nat'l Hockey League* v. *Metro. Hockey Club*, 427 U.S. 639, 643 (1976)).

NCDOJ's objections and responses reflect a lack of familiarity with the rules governing discovery after the 2015 Amendments to the Federal Rules. It has now been years since the 2015 Amendments went into effect. Attorneys who practice in federal court should not just be familiar with the rules, they should have fully incorporated the Rules' requirements into their discovery practices. A renewed interest by courts in applying the sanctions provided in Rule 26(g) may encourage attorneys who have yet to embrace the more recent changes to the Federal Rules to do so promptly.

Thus, after considering the particular circumstances of this violation of Rule 26(g), the court will, in its discretion, order that the attorney who signed the objections and responses, Amar Majmundar, must complete 4 hours of continuing legal education programs on the discovery provisions of the Federal Rules of Civil Procedure within 90 days.

## IV.    Conclusion

As discussed in greater detail above, the court orders as follows:

1.  NCDOJ's Motion to Compel and Motion for Sanctions (D.E. 39) is granted.

    a.  Within 14 days from the date of this order, the parties must confer to select a date for Johnson's deposition. If the parties cannot select a mutually agreeable date and time for the deposition, they should notify the undersigned's case manager and the

court will convene a telephonic hearing to select a date and time for the deposition. The court may impose additional sanctions, including dismissal of the complaint or the entry of a default, against any party who does not act reasonably and in good faith in scheduling the deposition.

b. Johnson will remit $160 to NCDOJ within 90 days from the date of entry of this order.

2. Johnson's Motion to Compel is granted. Within 30 days from the date of this order, NCDOJ must supplement its responses to Johnson's discovery requests:

a. NCDOJ must supplement its responses to Interrogatories 1–10 and 15–17 to specify the material facts and identify relevant witnesses and documents that support its denials of the factual allegations in each of the specified paragraphs from the Second Amended Complaint. NCDOJ need not provide any additional information regarding Paragraphs 54–61 in the Second Amended Complaint as those allegations are no longer part of the claims in this case. NCDOJ's must include all the responsive information in its interrogatory responses and may not refer Johnson to other pleadings or documents filed in this action.

b. NCDOJ must produce any documents responsive to Requests for Production 1–7, 13, 14, 22, 24, 25 (as modified by the court) withheld based on a boilerplate objection that the request was vague, overbroad, ambiguous, unintelligible, or some combination thereof.

c. NCDOJ must supplement its responses to each of Johnson's requests for production of documents to state whether it withheld any documents because of those objections.

d. If there are any valid objections remaining to Johnson's Requests for Production, NCDOJ must review their objections and determine whether the objection applies to the entire request or only a part of it. If the objection applies to only a part of the request, it must produce responsive documents that are not subject to the objection.

e. If NCDOJ claims any documents are being withheld based on a privilege or as trial preparation materials it must expressly make the claim in its responses and serve a privilege log on Johnson that complies with the Federal Rules.

f. NCDOJ must provide a verification or declaration with its supplemental interrogatory responses to indicate that they were answered under oath.

3. If NCDOJ believes that it must produce confidential documents or information because of this order, it will, after conferring with Johnson, move for a protective order no later than 14 days after the entry of this order.

4. Amar Majmundar must complete 4 hours of continuing legal education programs on the discovery provisions of the Federal Rules of Civil Procedure within 90 days from the date of entry of this order. Majmundar will file a notice on the docket certifying that he has completed this requirement.

Dated: November 7, 2018

_Robert T. Numbers II_
_____
Robert T. Numbers, II
United States Magistrate Judge

Appendix to Order

> If the court has not listed a Request for Production of Document below, NCDOJ should respond to it as stated in the original request for production.

1.    A copy of any policies, guidelines, or procedures enacted by or applicable to NCDOJ relating to racial discrimination or retaliation for complaining about racial discrimination which were in effect at any time between April 1, 2014, and November 1, 2014.

2.    A copy of any policies, guidelines, or procedures enacted by or applicable to NCDOJ relating to the handling of employee complaints of racial discrimination or retaliation which were in effect at any time between April 1, 2014, and November 1, 2014.

6.    Any and all documents reflecting any conversations or communications by, among, or between employees or agents of NCDOJ regarding any allegations made by Johnson that she was being or had been discriminated against by Richard Slipsky and Robert Lodge.

7.    Any and all documents that relate or pertain to any investigation conducted by NCDOJ into Johnson's allegations of discrimination or retaliation by Richard Slipsky, Robert Lodge, or Josephine Tetteh.

10.   Any and all documents that describe any complaints, charges, reports or allegations, formal or informal, of race or sex discrimination and/or retaliation, which were made by any person other than Johnson, against Josephine Tetteh, Richard Slipsky, and Robert Lodge at any time during his/her employment with you.

11.   Any and all documents that relate or pertain to any reprimand, demotion or other disciplinary action taken against, Josephine Tetteh, Richard Slipsky, Robert Lodge as a result of any complaints, charges, reports or allegations formal or informal, that he or she engaged in race or sex discrimination and or/retaliatory conduct against any person other than Plaintiff, at any time during their employment with you.

12.   Any and all documents that relate or pertain to any investigation of any complaints, charges, reports or allegations, formal or informal of race or sex discrimination and/or retaliation which were made by any person other than Plaintiff, against Josephine Tetteh, Richard Slipsky, and Robert Lodge at any time during his/her employment with you.

13.   The appropriate scope of this Request for Production is encompassed by Request for Production 10. NCDOJ does not need to respond to it.

15.   Documents that reflect attendance by Josephine Tetteh, Richard Slipsky, and/or Robert Lodge at any discrimination and/or retaliation training conducted by or on behalf of NCDOJ.

16.   NCDOJ does not need to respond to Request for Production 16.

17.   A copy of any policies, guidelines, or procedures enacted by or applicable to NCDOJ for setting and /or determining salaries for Paralegal II positions in the Human Services or

Health Services Sections which were in effect at any time between April 1, 2014, and November 1, 2014.

18.     For each white or Caucasian Paralegal II that was employed by NCDOJ in the Human Services or Health Services Sections who received a salary increase at any time between April 1, 2014, and November 1, 2014, the date and amount of each increase in salary with NCDOJ.

19.     For each white or Caucasian Paralegal II that was employed by NCDOJ in the Human Services or Health Services Sections who received a salary increase at any time between April 1, 2014, and November 1, 2014, documents explaining the reasons for the salary increase.

20.     Any and all written job descriptions or any other similar documents that describes the work duties and or/responsibilities of each position held by Josephine Tetteh during her employment with Defendant between April 1, 2014, and November 1, 2014.

21.     Documents reflecting the date and type of every dismissal, suspension, or demotion for disciplinary reasons taken by the NCDOJ against Josephine Tetteh. If the disciplinary action was a dismissal, NCDOJ shall produce a copy of the written notice of the final decision of the head of the department setting forth the specific acts or omissions that are the basis of the dismissal.

22.     NCDOJ's policies or procedures regarding performance evaluations which were in effect from between April 1, 2014, and November 1, 2014.