UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
Civil Action No. 5:16-cv-679-FL

| | |
|---|---|
| ROBIN JOHNSON,             ) | |
|              ) | |
|        Plaintiff,     ) | **MEMORANDUM OF LAW IN** |
|    v.              ) | **SUPPORT OF DEFENDANT'S** |
|              ) | **MOTION FOR SUMMARY** |
| THE NORTH CAROLINA DEPARTMENT  ) | **JUDGMENT** |
| OF JUSTICE, ATTORNEY GENERAL'S  ) | |
| OFFICE, ADMINISTRATIVE DIVISION  ) | |
| HUMAN SERVICES SECTION,      ) | |
|              ) | |
|       Defendant.    ) | |
| _____  ) | |

## NATURE OF THE CASE

The North Carolina Department of Justice ("NCDOJ" or "the Department") hired Plaintiff Robin Johnson for her first paralegal job as a Paralegal I in the Human Services and Medical Facilities Section. Now, Plaintiff is employed in the same section in a Paralegal II position. Plaintiff filed an Amended Complaint on January 4, 2017, against NCDOJ in the Eastern District of North Carolina.

On June 26, 2017, the court granted NCDOJ's motion to dismiss all Plaintiff's claims except her Title VII retaliation claim. There is no allegation NCDOJ interfered with the enforcement of an EEOC investigation. Rather, Plaintiff only alleges NCDOJ is liable because after Plaintiff filed an EEOC Charge on December 16, 2013, Plaintiff was expected to perform alleged additional job duties—which coincidentally match the Paralegal II position's job responsibilities—without a pay increase and reclassification to a higher position. Defendant moves for entry of judgment in its favor on the remaining Title VII retaliation claim asserted against it.

There was no adverse action taken by NCDOJ against Plaintiff. During the absence of another paralegal in the same section, Plaintiff was asked to draft pleadings for filing in the Office

1

of Administrative Hearings ("OAH") and update a calendar with litigation deadlines for her supervising attorney. On another occasion, Plaintiff was asked to help an attorney in the Health Services Section, whom she had previously helped in the past, on one future criminal appellate brief without any immediate deadlines.

In addition to the absence of an adverse action, there is no evidence of causation because Plaintiff has not come forward with any evidence that her filing of an EEOC charge was the cause of any action taken by NCDOJ. There is also no causation because there is at least a four-month gap between the filing of her first EEOC charge and the allegations in her second EEOC charge.

Nevertheless, Plaintiff contends that this suit should proceed because Defendant did not give her a raise for performing these Paralegal II responsibilities. To support that position, Plaintiff characterizes the standard job responsibilities of a Paralegal II position as if they were additional duties imposed on her. In effect, Plaintiff seeks more pay for the same job. That expansive theory of liability would potentially render routine differences at work over compensation into a potential Title VII retaliation claim. In fact, an adverse ruling would suggest an employer would face a potential prima facie case of retaliation for declining a salary demand after an employee files an EEOC charge. This would misconstrue the anti-retaliation provision of Title VII, which was intended to prevent interference with EEOC enforcement, not create leverage for salary negotiations.

This case is about dissatisfaction with compensation, not retaliation. To decide this motion, the Court need not decide how a state employer should manage its internal personnel affairs and compliance with state policies regarding compensation and classification; it need only decide that asking an employee to perform the standard responsibilities of his or her job is not an adverse

2

action, and in the alternative, there is no causation when there is a three or four month gap between the protected activity and the alleged adverse actions.

## STATEMENT OF FACTS

NCDOJ hired Plaintiff for her first paralegal job as a Paralegal I in the Debt Referral Office of the Human Services and Medical Facilities Section ("Human Services") in 2001. (D.E. 10, Pl. Dep. pp. 98, 117) Richard Slipsky ("Slipsky") (white male), Special Deputy Attorney General and Section Head of the Human Services Section, promoted Plaintiff to a Paralegal II position in 2006.[1] (D.E. 11; Pl. Dep. pp. 93, 137) Since filing this suit, NCDOJ has continuously employed Plaintiff in a Paralegal II position in the same section. (Pl. Dep. pp. 118, 134).

**A. Paralegal II job description before Plaintiff requested a new job description.**

The original Paralegal II job description, dated October 21, 1998, shows 100 percent (100%) of the Paralegal II's duties were to provide litigation support to an attorney assigned to represent the Department of Health and Human Services (DHHS). (D.E. 19 p. 2) These duties entailed handling phone calls, information related to client cases, discovery, trial preparation, litigation deadlines, scheduling appearances with witnesses, drafting documents, and legal research including checking citations. (D.E. 19 p. 2)

**B. Plaintiff's agreed upon Paralegal II job description.**

The current Paralegal II position provides litigation support to attorneys assigned to represent DHHS. [2] (D.E. 21 p. 2; Pl. Dep. pp. 41-42) Ninety percent (90%) of the Paralegal II position's duties are to provide litigation support. (D.E. 21 pp. 2-3) The duties still entail handling phone calls, information related to client cases, discovery, trial preparation, litigation deadlines,

---

[1] Slipsky has retired from NCDOJ. (Pl. Dep. p. 135)

[2] This information is in the position description herein referred to as the job description.

scheduling appearances with witnesses, drafting documents, and legal research including checking citations. (D.E. 21 pp. 2-3) In both job descriptions, the duties are essentially the same with litigation and administrative responsibilities; however, the duties related to helping with briefs were moved from litigation support to a separate category constituting ten percent (10%) of the position's duties. *Id.*

### C. After filing an EEOC Charge, Plaintiff demands a raise and reclassification.

On December 16, 2013, Plaintiff filed her first charge of discrimination (EEOC Charge # 433-2014-00579) based on allegations of race and gender discrimination against NCDOJ with the United States Equal Employment Opportunity Commission ("EEOC"). (D.E. 28; Pl. Dep. pp. 144-145) During the EEOC investigation, in March 2014, Slipsky assigned Josephine Tetteh ("Tetteh"), a black female attorney, as Plaintiff's new supervisor.[3] (Pl. Dep. pp. 17, 99, 134) After the announcement of Tetteh as Plaintiff's supervisor, Plaintiff testified she did not have a problem working for Tetteh. (Pl. Dep. p. 100)

On May 30, 2014, Plaintiff contacted Susan "Susie" Beasley, Position Management Analyst, in Human Resources via email about obtaining an updated job description and Plaintiff copied Tetteh. (D.E. 27; Pl. Dep. p. 143)

On June 4, 2014, Plaintiff requested revisions to the Paralegal II job description claiming that her current duties required reclassification and a pay raise. (D.E. 15; Pl. Dep. p. 139) In an attachment, Plaintiff pointed out in detail duties, which she had been allegedly performing for years and were allegedly not in the 1998 Paralegal II job description. Plaintiff wanted these duties incorporated into a new job description. (D.E. 23; Pl. Dep. pp. 140-141)

---

[3] Tetteh has moved to a different section at NCDOJ. (Pl. Dep. p. 135)

4

On June 5, 2014, Slipsky asked Human Resources via memorandum to review Plaintiff's position and review whether Plaintiff's salary was consistent with other NCDOJ paralegals with similar duties. (D.E. 30; Durham Aff.)

On July 1, 2014, Tetteh shared a proposed revised job description with Plaintiff for review and comment. (D.E. 20, Pl. Dep. pp. 38-39, 143-144) On July 3, 2014, Plaintiff notified Tetteh via email that she felt the proposed language, "[t]his position is now also responsible for providing support to the Section attorneys and as needed, other attorneys in the Administrative Division of the Attorney General's office" was retaliatory. (D.E. 24; Pl. Dep. p. 141).[4] At that time, Plaintiff believed there were 95 attorneys in the Administrative Division. (D.E. 24, Pl. Dep. p. 40)

In the same July email, Plaintiff told Tetteh regarding her role providing assistance, "[t]hat wording is wrong because I don't assist in collection cases, I handle collection cases from beginning to end without assistance from anyone." *Id.* "In the eight (8) years that I have been handling these cases and have collected hundreds of thousands of dollars, an attorney has never had to go to court and legal advice is minimum." Id. "The <u>attorney</u> is the person that will assist in these collection matters." *Id.* (Emphasis original.)

On July 7, 2014, Tetteh responded via email, "I really appreciate you taking the time to share your concerns with me. It is very important to me that we sit down to discuss and resolve your concerns. Ms. Beasley, would you or anyone in your office be able to facilitate such a discussion?" *Id.*

After receiving a response from Susan Beasley that Mari Marsh ("Marsh") was the appropriate point of contact in Human Resources, Tetteh contacted Marsh, NCDOJ's Employee

---

[4] At that time, the Human Services and Health Services Sections were in the Administrative Division. After a department wide reorganization in 2017, these two sections were placed in the Health and Human Services Division.

5

Relations Manager, and stated, "Good morning Ms. Marsh, Ms. Beasley mentioned that you would be a good resource (see below). Please let us know your availability. Thanks, Josephine." (D.E. 18; Pl. Dep. pp. 65-67)

On July 31, 2014, Plaintiff told Marsh during a separate discussion about her availability to discuss office space arrangements with Human Resources, "I'm not working on any pressing projects and I don't have any mandatory court filings. My work is flexible enough where I can adjust my schedule. Thanks." (D.E. 26; Pl. Dep. p. 142)

Plaintiff also testified that she did not provide litigation support to 95 attorneys. (Pl. Dep. p. 48) Plaintiff still provided litigation support in debt collection cases including filing documents for the debt referral office, gathering documents, and maintaining a calendar with litigation deadlines when necessary. (Pl. Dep. pp. 22-24, 50; D.E. 19, 23; 25) Plaintiff still drafted letters. (Pl. Dep. p. 51) Plaintiff still gathered information to complete tasks such as attorney time reports. (Pl. Dep. pp. 49, 138; D.E. 13) Despite helping in the past, Plaintiff refused to assist June Ferrell with a criminal brief upon her supervisor's request. (Pl. Dep. pp. 82, 105-107)

In addition, Plaintiff believed her supervisor did not have a right to know what she was working on. (Pl. Dep. p. 84) In July 2014, Plaintiff refused to send the attorney-time report to Tetteh as instructed, and Marsh, Employees Relations Manager, instructed Plaintiff to send the attorney time report because it could be considered insubordination. (Pl. Dep. p. 83) On July 28, 2014, Plaintiff sent an email to Slipsky and June Ferrell, Section Head of Health Services, about the attorney-time report without copying Tetteh. (D.E. 12, Pl. Dep. pp. 137-138)

In July 2014, Plaintiff and Tetteh met with Marsh to review the proposed job description in an attempt to address Plaintiff's concerns. (D.E. 18; Pl. Dep. p. 65-67)

**D. NCDOJ's continued effort to resolve Plaintiff's complaints about the proposed Paralegal II job description.**

During the ongoing collaboration on the proposed job description, on October 13, 2014, Plaintiff contacted Tetteh via email about removing the language indicating additional responsibility to provide litigation support to "other attorneys in the Administrative Division on criminal and civil briefs." (D.E. 17; Pl. Dep. p. 62) On the same day, Tetteh responded by removing the reference and letting Plaintiff know via email, "I've clarified it (attached). Thanks! Josephine." (D.E. 25; Pl. Dep. pp. 63-64)

After Defendant revised the job description, on October 13, 2014, Plaintiff signed, dated, and certified the job description agreeing that the "position description" for the Paralegal II position is a "complete and accurate description of her responsibilities and duties" for the Human Services/Health Service Section. (D.E. 21; Pl. Dep. p. 41) The job duties did not change and were consistent with a Paralegal II position. *Id.*

After resolving Plaintiff's complaints about the job description, on October 28, 2014, Tetteh talked to Plaintiff about errors in a brief, which was due on the same day that Plaintiff worked on it; no disciplinary action was taken. (D.E. 31; Tetteh Aff.)

**E. No paralegal in the Human Services and Medical Facilities Section received a pay raise in 2014 other than a legislative pay increase that Johnson received as well.**

Before the Paralegal II position's audit was completed (D.E. 30; Durham Aff.), Plaintiff alleged that a white paralegal named Pamela Norton ("Norton") received a pay raise in November 2014 and that Plaintiff had been denied a pay raise since June 2014. (*See* Amended Compl. ¶43, 51)

Norton worked in a different section, and she had a different supervisor. (Pl. Dep. p. 69-70) Pamela Norton (Paralegal II) received an in range adjustment in salary on November 1, 2014

7

for an increase variety in her position to $41,180 effective November 1, 2014 and at that time Robin Johnson (Paralegal II) had a salary of $43,655 effective July 1, 2014. (Bierline Aff.) Plaintiff did not check salaries to confirm whether or not she was inequitably paid relative to her co-workers in the Human Services Section. (Pl. Dep. pp. 72, 74-75, 125-126)

Later, NCDOJ's Human Resources reviewed pay equity and classification for Plaintiff's position and found no inequities in her pay or job classification. (D.E. 14; Pl. Dep. p. 97)

Plaintiff was one of three paralegals in the Human Services Section in 2014. (D.E. 30; Durham Aff.; Tetteh Aff.) The other two paralegals were Anthony Bonanza ("Bonanza"), a white male, and Teresa James ("James"), a white female. James works "off campus" at the Debt Referral Office and Bonanza shared a workspace with Plaintiff at NCDOJ. (Pl. Dep. p. 72) Bonanza (Paralegal II) and James (Paralegal I) did not receive pay increases in 2014 other than a $1,000 legislative increase that was provided to Bonanza, James, and Plaintiff effective July 1, 2014. (Bierline Aff.)

## F. No adverse change in her benefits or compensation occurred after the EEOC charge.

On December 5, 2014, the EEOC closed Plaintiff's first charge of discrimination (# 433-2014-00579) and issued a Dismissal and Notice of Rights finding that based "upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statute." (D.E. 32)

On the same day, Plaintiff filed a second charge of discrimination (EEOC Charge # 433-2015-00275) with the EEOC against NCDOJ alleging retaliation from April 1, 2014, to November 1, 2014. (D.E. 29; Pl. Dep. pp. 43-44) During this time, Plaintiff had not received a written warning, suspension without pay, demotion, or a negative performance review. (Pl. Dep. pp. 92, 98-99, 134; D.E. 16) Plaintiff continued to receive the same or greater salary, sick leave, health

8

insurance, a work station, computer, pension contributions, and a one-hour lunch break. (Pl. Dep. pp. 133-134)

On March 31, 2016, the EEO Investigator issued a Notice of Determination for No Cause for the second EEO charge of discrimination. (D.E. 36)

On October 27, 2017, Plaintiff received notice the Paralegal II classification was receiving a pay increase, and the Office of State Human Resources determined the Paralegal II classification for all state employees had a pay rate below the rate of pay for similar jobs in the general job market. (D.E. 22; Pl. Dep. p. 119) As a result, Plaintiff received a pay increase effective August 1, 2017. (D.E. 22)

## ARGUMENT

### I. Summary Judgment Standard.

This Court has not hesitated to grant summary judgment in favor of employers in employment discrimination cases when appropriate, and the Fourth Circuit has not hesitated to affirm. *Evans v. Technologies Applications & Servs. Co.*, 80 F.3d 954 (4th Cir. 1996). In an employment discrimination lawsuit, as in any other lawsuit, "[t]he moving party must demonstrate the absence of an essential element of the nonmoving party's case and that it is entitled to judgment as a matter of law. *Honor v. Booz-Allen & Hamilton, Inc.*, 383 F.3d 180, 185 (4th Cir. 2004) (citations omitted) (concluding that plaintiff's allegations that he was "excluded from certain meetings and emails," that he received a negative employment evaluation, and that he was ostracized were not adverse employment actions). "Once the moving party discharges its burden by showing that there is an absence of evidence to support the nonmoving party's case, the nonmoving party then must come forward with specific facts showing that there is a genuine issue for trial." *Id*. The court considers "the facts in the light most favorable to the non-moving party." *Id*.

"Summary judgment will be granted unless a reasonable jury could return a verdict for the nonmoving party on the evidence presented." *Id*. In other words, a factual dispute is not "genuine" unless it involves more than a scintilla of evidence and requires a trial to resolve competing reasonable factual contentions. *See Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002) ("Conclusory or speculative allegations do not suffice, not does a 'mere' scintilla of evidence' in support of his case"); *see also Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985) (plaintiff cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another). In addition, facts in dispute must be "material," which means only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *Hooven-Lewis v. Caldera*, 249 F.3d 259, 265 (4th Cir. 2001)

NCDOJ is entitled to summary judgment because Plaintiff's testimony demonstrates that judgment should be entered for NCDOJ. *Chalmers v. Tulon Co. of Richmond,* 101 F.3d 1012, 1014, n.1 (4th Cir. 1996), *cert. denied*, 522 S. Ct. 813 (1997); *compare Mackey v. Shalala*, 360 F.3d 463, 469-70 (4th Cir. 2004) (A plaintiff's own self-serving opinions, absent anything more, are insufficient to establish a prima facie case). Furthermore, "[i]t is the ['] affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.['] (['] One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and we think it should be interpreted in a way that allows it to accomplish this purpose.[']."" *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (internal citations omitted); *see also Lightner v. City of Wilmington*, 545 F.3d 260, 265 (4th Cir. 2008) (an employer is entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision)

10

II.     **The Court Should Enter Summary Judgment because Plaintiff cannot prove her retaliation claim.**

The purpose of the anti-retaliation provision of Title VII of the Civil Rights Act of 1964 ("Title VII), 42 U.S.C.S. §§ 2000e-3, is to prevent interference with the enforcement of the Act. *See Ray v. Int'l Paper Co.*, 909 F. 3d 661, 670 (4th Cir. 2018). Courts have to balance the purpose of Title VII "against Congress' equally manifest desire not to tie the hands of employers in the objective selection and control of personnel." *See Armstrong v. Index Journal Co.*, 647 F.2d 441, 448 (4th Cir. 1981).

"To establish a prima facie case of retaliation under Title VII of the Civil Rights Act of 1964, an employee must prove three elements: (1) that she engaged in property activity, (2) that an adverse employment action was taken against her, and (3) that there is a casual link between the protected activity and the adverse employment action." *Laughlin v. Metropolitan Wash. Airports Auth.,* 149 F.3d 253 (4th Cir. 1998).

i.     **Protected activity.**

In order to establish protected activity, an employee must prove an employer discriminated against her because the employee "has opposed any practice made an unlawful practice by" Title VII "or because he has made a charge, testified, assisted, or participated in any matter of investigation, proceeding, or hearing" under Title VII. *Villa v. CavaMezze Grill, LLC*, 858 F.3d 896 (4th Cir. 2017) (quoting 42 U.S.C. § 2000(e)-3(a)). The first part of the statute is known as the "opposition clause," while the second is known as the "participation clause." *Id.*

On December 16, 2013, Plaintiff filed an EEOC charge based on race and gender discrimination. (Pl. Dep. p. 145)[5]

### ii. Adverse action.[6]

An objective test (i.e. a reasonable employee) establishes an adverse action. *See Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68, 126 S. Ct. 2405, 2415 (2006); *compare Islamic Soc'y of Fire Dep't Pers. v. City of N.Y.*, 205 F. Supp. 2d 75, 85 (E.D.N.Y. 2002) (the court rejected plaintiff's attempt to show an adverse employment action based simply on the plaintiff's personal feelings about the employer's actions)

A material adverse action in a retaliation claim does not need to be an ultimate employment decision, as in substantive discrimination claims. *See Burlington N. & Santa Fe Ry.,* 548 U.S. at 67. Instead, a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which means it might have dissuaded a reasonable worker from making or supporting a charge of discrimination. *Id.* at 68.

However, a materially adverse action does not include those petty slights or annoyances that often take place at work and that all employees experience." *Id. See also, Ray v. Int'l Paper Co.*, 909 F.3d 661, 670 (4th Cir. 2018) and *Adams v. Anne Arundel Cty. Pub. Sch.*, 789 F.3d 422, 431 (4th Cir. 2015) (Title VII does not cover trivial or minor harm). "An adverse action must bear some direct or indirect impact on an individual's employment as opposed to harms immaterially related to it." *Int'l Paper Co.*, 909 F.3d at 670; *See also, Cepada v. Bd. Of Educ.*, 974 F. Supp. 772 (D. Md. 2013) (materially adverse actions do not include "trivial" harms). "Changes in duties or

---

[5] On August 31, 2016, NCDOJ's motion to dismiss entered the EEOC charges, no cause determination and right to sue documentation into the record along with an affidavit from Barbara J. Gibson.

[6] Plaintiff testified Robert "Bob" Hargett, head of the former Administrative Division, had not said or done anything to support her retaliation claim. Pl. Dep. pp. 101-102

working conditions that cause no materially significant disadvantage are insufficient to establish the adverse conduct required to make a prima facie case." *Ledergerber v. Strangler*, 122 F.3d 1142, 1144 (8th Cir. 1997) "The antiretaliation provision, the Court said, [']protects an individual not from all retaliation, but from retaliation that produces an injury or harm.[']."[7] *Lettieri v. Equant, Inc.*, 478 F.3d 640, 650 n.2 (4th Cir. 2007) (footnote in this case).

Furthermore, it is also well-settled that complaints premised on nothing more than "rude treatment by [coworkers]," "callous behavior by [one's] superiors," or "a routine difference of opinion and personality conflict with [one's] supervisor," are not actionable under Title VII. *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315-16 (4th Cir. 2008) (internal citations omitted); *see also Munday v. Waste Mgmt., Inc.*, 126 F.3d 239, 243 (4th Cir. 1997) (plaintiff's allegations of "uncivility" by her co-workers "most of which constituted refusals to speak to her" did not constitute an adverse action to support a retaliation claim); *Hartsell v. Duplex Prods.*, 123 F.3d 766, 773 (4th Cir. 1997) (plaintiff's Title VII claim was dismissed when a "trial would countenance a federal cause of action for mere unpleasantness.")

Even though Plaintiff engaged in protected activity, there was no adverse action taken in response to her engagement in that protected activity. While Plaintiff alleges various actions she describes as retaliatory, no reasonable employee would view them that way.

For example, Plaintiff contends she received additional duties such as filing documents, preparing criminal briefs, and drafting correspondence in retaliation for filing an EEOC charge. These were all Paralegal II position responsibilities that she had prior to filing an EEOC charge.

---

[7] In initial disclosures, interrogatories (unsworn), and during testimony at deposition, Plaintiff has refused to disclose the name of the alleged Human Resources employee consulted in calculating her alleged damages. (Pl. Dep. pp. 122-124; D.E. 38)

13

Similarly, Plaintiff contends she had to support 95 attorneys in retaliation for filing her EEOC charge. This was a *proposed* job description elicited by Plaintiff's own demand for an updated job description and reclassification to a Paralegal III position—a new classification, which required additional job responsibilities and funding.

Finally, Plaintiff contends she did not receive a pay increase in retaliation for filing her first EEOC charge. However, upon closer inspection, Plaintiff was asked to perform standard and expected Paralegal II job responsibilities, her pay was equitable relative to other paralegals, and she objected to including anything in the proposed job description that she perceived as an additional job duty, which was a prerequisite for reclassification consideration.

    a. *There were no additional duties.*

Plaintiff takes issue with job responsibilities that pre-date her EEOC charge. The primary purpose of Plaintiff's Paralegal II position is to provide litigation support to the Health and Human Services Sections' attorneys by providing a full range of support services including, but not limited to: researching, collecting debt, contacting stakeholders; filing, formatting, and processing documents; generating reports; preparing exhibits and documents; archiving; and other litigation support services as may be required in the representation of Department of Health and Human Services (DHHS). (D.E. 21 pp. 2-3)

Here, Plaintiff was expected to help with filing documents and maintaining a litigation calendar. She contends she had responsibility for all of James' court filings in the Debt Referral Office, and that Tetteh's request for help was retaliatory. However, Plaintiff did not have sole responsibility for the Debt Referral Office. Tetteh was the supervising attorney/attorney of record, and James was the assigned paralegal in the Debt Referral Office. (Tetteh Aff.) As one of two paralegals under her supervision, Tetteh simply asked Plaintiff to send copies of files to Teresa

James, who worked at an off-site location. (Pl. Dep. p. 24) Tetteh also asked Plaintiff to prepare pre-hearing statements and maintain calendars with litigation deadlines when James was on vacation or sick. (Pl. Dep. pp. 22-23)

In addition to the fact that filing documents and maintaining a litigation calendar were responsibilities that predated her filing an EEOC Charge, Plaintiff testified she had a prior responsibility to help the Debt Referral Office. This only underscores that these responsibilities predated both EEOC charges. (D.E. 23) During her demand for a pay increase and reclassification, Plaintiff admitted that she had already been copying, scanning, and filing prehearing statements for the Debt Referral Office with the Office of Administrative Hearings since 2006. (D.E. 23) However, Plaintiff also testified she had not handled any cases for the Debt Referral Office since she was a Paralegal I. (Pl. Dep. pp. 23-24). Before promotion, she worked as the Paralegal I in the Debt Referral Office. (D.E. 23)

Along with the pre-existing responsibilities to help the Debt Referral Office, Plaintiff's contention that her supervisor assigned responsibility for court filings in the Debt Referral Office, standing alone, cannot constitute an adverse employment action. *See Young v. White*, 200 F. Supp. 2d 1259, 1272–73 (D. Kan. 2002) (no adverse employment action when a supervisor assigns tasks within his authority even though plaintiff "might disagree with the tasks that are assigned or with the decision to give certain tasks to certain individuals" because such assignment did not "alter[ ] plaintiff's employment status in any way or had any negative effect on plaintiff's standing within the organization."). Plaintiff does not allege or demonstrate through evidence that the responsibility was known to be less prestigious, objectively inferior or was more arduous. Instead, Plaintiff's contention amounts to nothing more than a criticism regarding the exercise of her supervisor's legitimate authority and discretion in assigning tasks to subordinate employees.

15

Accordingly, Plaintiff's allegation that she was assigned a task related to the Debt Referral Office cannot constitute an adverse employment action as a matter of law.

In addition to being asked to help her supervisor and a paralegal in her section, Plaintiff contends her supervisor asked her to help June Ferrell, Section Head of Health Services Section, on one criminal brief. (Pl. Dep. pp. 32-33, 82, 105) Plaintiff testified there was no immediate work to be done, and ultimately she did not provide assistance. (Pl. Dep. p. 107) In effect, nothing happened other than a conversation about potentially helping Ferrell one-time, which Plaintiff had done in the past without complaint.

Further showing no adverse action by recounting prior job responsibilities, Plaintiff contends it was an additional duty to draft correspondence for the head of her section. In other words, Plaintiff complained about being asked to occasionally draft correspondence for Slipsky. (Pl. Dep. p. 51) This task was squarely within her job description to "draft letters." (D.E. 19, 25)

Even Plaintiff's own statements belie her contention that she was assigned additional duties.  In response to an inquiry about her availability for a meeting, she said, "I'm not working on any pressing projects and I don't have any mandatory court filings. My work is flexible enough where I can adjust my schedule. Thanks." (D.E. 26, Pl. Dep. p. 142) In addition, Human Resources performed a classification and salary review for Plaintiff's Paralegal II position and "HR found no inequities in [her] pay or job classification." (D.E. 14) Human Resources informed Plaintiff, "[s]hould you assume additional duties in the future, your supervisor Tetteh may request another review for consideration." *Id.* As shown above, Plaintiff was asked to perform the standard duties associated with a Paralegal II position, and the evidence shows there was a legitimate, non-retaliatory reason for requesting her support.

Plaintiff does not even suggest that the supposed changes to her job responsibilities were accompanied by a decrease in salary or change in work hours, much less does she come forward with evidence of such. *See Crady v. Liberty Nat'l Bank & Trust Co.,* 993 F.2d 132, 136 (7th Cir. 1993); *see also Kidd v. Mando Am. Corp.,* 731 F.3d 1196, 1204 n. 11 (11th Cir. 2013) (noting that "it's a rare case where a change in employment responsibilities qualifies as an adverse employment action"); *Mungin v. Katten Muchin & Zavis,* 116 F.3d 1549, 1557 (D.C. Cir. 1997) (agreeing with "other circuits [which] have held that changes in assignments or work-related duties do not ordinarily constitute adverse employment decisions if unaccompanied by a decrease in salary or work hour changes"). Accordingly, any alleged "additional job duties" NCDOJ purportedly assigned to Plaintiff cannot constitute an adverse employment action.

> b. *A proposed job description is not an adverse action.*

A reasonable worker would not consider preparation of a proposed job description an adverse action, especially when that worker requested a new job description him- or herself. In fact, Plaintiff prompted the creation of a new proposed job description, which she now contends was an act of retaliation. In May 2014, Plaintiff asked for a new job description because she felt her job description was outdated.[8] (D.E. 27) In June 2014, Plaintiff asked for a salary increase, back pay, and reclassification (i.e. change to a paralegal III position), and told Tetteh that Susan Beasley needed an updated job description. (D.E. 15, 19, 23) Tetteh collaborated with Plaintiff on drafts of the proposed job description to address concerns, and Tetteh facilitated a conversation with Human Resources when Plaintiff indicated displeasure with the proposed changes. (D.E. 24, 25)

---

[8] An in-range adjustment or a reclassification requires significant changes in duties and responsibilities. *See State Human Resources Manual,* *In-Range Adjustments,* p. 80 (April 1, 2008) (D.E. 39)

Moreover, a proposed job description is not an adverse action because a proposal by its nature has minimal, if any, impact on an employee other than perhaps some irritation or the inconvenience of conversing about it. Furthermore, the proposals are moot because Plaintiff admitted the proposed job description was revised to remove the language referencing providing support to the attorneys in the Administrative Division. After Tetteh addressed Plaintiff's concerns, Plaintiff agreed, signed, and certified as accurate the final job description with the reference to supporting the Administrative Division removed.

Furthermore, showing the job description was only a proposal, Plaintiff testified she never had to provide support to 95 attorneys, which is the number of attorneys she believed were in the Administrative Division. (Pl. Dep. pp. 40, 48) She provided support to Tetteh in debt collection cases. (Pl. Dep. p. 50) She also provided assistance to the Health Services Section. (Pl. Dep. p. 51) Although, on a regular basis, she performed her debt collection work in the Human Services Section autonomously with minimal interaction with NCDOJ attorneys. (D.E. 24, Pl. Dep. p. 68)

   c.   *Differences of opinion are not adverse actions.*

In addition to a lack of additional duties, Plaintiff's difference of opinion over the compensation for the Paralegal II position is not an adverse action. "The fact that an employee may have filed an equal employment opportunity claim gives him no license to vilify supervisors or co-workers or indeed make every response of theirs to such vilification the basis of a claim of retaliation." *Settle v. Baltimore County*, 34 F. Supp. 2d 969 (D. Md. 1999). "An action that merely causes an employee irritation or inconvenience, but does not affect a term, condition, or benefit of employment, is not an adverse employment action." *Allen v. Rumsfeld*, 273 F. Supp. 2d 695, 705 (D. Md. 2003) (internal citations omitted); *see also Pettiford v. N.C. HHS*, 228 F. Supp. 2d 677, 692 (M.D.N.C. 2002).

18

A reasonable worker would also not equate supervising with an adverse action, especially when there was no disciplinary action imposed. For example, Plaintiff was late and her supervisor asked co-workers whether Plaintiff was at work. (Pl. Dep. pp. 36, 103) Her supervisor had a reasonable expectation of Plaintiff reporting to work on time or at least communicating with her about late arrivals.

Similarly, there was no adverse action when Slipsky removed himself from directly supervising Plaintiff during an EEOC investigation and assigned Tetteh to supervise Plaintiff. Tetteh was someone whom Plaintiff had gotten along with in the workplace. (Pl. Dep. 100, 134) Also, after Plaintiff raised concerns about her salary, it was not an adverse action when Slipsky asked Human Resources to check whether Plaintiff was being equitably paid. (D.E. 30, Durham Aff.)

### iii. Causation.

In order to prove causation, "Title VII claims require proof of the desire to retaliate was the but-for cause of the challenged employment action." *See CavaMezze Grill* at 900. The Supreme Court has also held that in order to establish causation, the temporal proximity between the protected activity and the adverse action must be "very close," noting that a period of three or four months was "insufficient." *Clark County School Dist. v. Breeden*, 532 U.S. 268, 121 S.Ct. 1508, 1511 (2001) (citations omitted). This comports with Fourth Circuit law. *Causey v. Balog*, 162 F.3d 795, 803 (4th Cir. 1998) ("four month lag between protected activity and termination is not sufficient to justify an inference of causation") (citation omitted); *see also Merrill v. McCarthy*, 184 F. Supp. 3d 221, 243 (three months is insufficient); *Pascual v. Lowe's Home Ctrs., Inc.*, 193 F. App'x 229, 233 (4th Cir. 2006) (A three- to four-month period "is too long to establish a causal connection by temporal proximity alone."); *King v. Rumsfeld*, 328 F.3d 145, 151 n.5 (4th Cir.

2003) (A two- and a half-month period between the supervisor's notice of the complaint and "the adverse employment action is sufficiently long so as to weaken significantly the inference of causation between the two events.")

In addition to the absence of an adverse action, Plaintiff cannot demonstrate a causal link between her alleged protected activity and the action she claims is adverse. There is at least a four-month gap between the alleged protected activity and the alleged adverse actions. Plaintiff filed her first EEOC charge on December 16, 2013. (D.E. 28) She filed her second EEOC charge on December 5, 2014, and described the alleged retaliation as having taken place from April 1, 2014, to November 1, 2014. (D.E. 29)

As a result, there was a four-month gap between the alleged protected activity (i.e. the first EEOC Charge in December 2013) and the alleged adverse actions described in April 2014 in the second EEOC Charge. Accordingly, "[a] plaintiff's EEOC charge defines the scope of her subsequent right to institute a civil suit." *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir. 2002); *see also Evans v. Technologies Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir. 1996).

Furthermore, Plaintiff has raised unfounded allegations beyond the time permitted in her second EEO filing. When Plaintiff filed her EEOC charge on December 5, 2014, it could only address alleged adverse actions within the past 180 days, which would be June 8, 2014 instead of April 1, 2014. *See Booth v. N.C. Dep't of Env't, Health & Nat. Res.*, 899 F. Supp. 1457, 1464 (E.D.N.C. 1995) (180 days to complain about alleged unlawful employment practices under federal law). Allegations prior to June 8, 2014 are barred due to the failure to exhaust administrative remedies. *See Technologies Applications & Serv. Co.* 80 F.3d at 963.

When the 180-day limitation is considered, a comparison of both charges shows an almost six-month gap between the alleged protected activity in the first charge (filed December 2013) and the alleged adverse actions (timely allegations in June 2014) in the second charge.

In sum, there is no causation. It is well-settled there is no causation through temporal proximity at three or four months. This case has an almost six month gap in time. Judgment should therefore be entered for Defendant.

### iv. Burden of Production Shifting Framework.

No adverse action has been taken against Plaintiff. As a result, the burden-shifting framework is inapplicable. However, even if Plaintiff had come forward with evidence of an adverse action, the facts brought forward by Defendant would satisfy its burden of production.

Assuming *arguendo* there is an adverse action*,* the burden-shifting framework of *McDonnell Douglas* begins with Plaintiff establishing a prime facie case. *Strothers v. City of Laurel*, 895 F.3d 317, 327 (4th Cir. 2018) (citation omitted). "After the prima facie showing is made, the burden of production then shifts to the employer to show that its purportedly retaliatory action was in fact the result of a legitimate non-retaliatory reason." *Id.* at 328. At this second stage of production, the employer does not have to support its reason with objective evidence that would satisfy a preponderance of the evidence standard because the burden of persuasion remains with the plaintiff. *See Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 143 (2000).

If the employer produces a legitimate nondiscriminatory reason for its action, the presumption of discrimination created by the prima facie case is rebutted. *Id*. When an employer gives a legitimate, nondiscriminatory reason, "it is not our province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason" for the adverse action. *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 279 (4th Cir. 2000).

In addition, "mere knowledge on the part of an employer that an employee … has filed a discrimination charge is not sufficient evidence of retaliation to counter substantial evidence of legitimate reasons" for an adverse action. *See Carter v. Ball*, 33 F.3d 450 (4th Cir. 1994) (citation omitted). "If the employer makes this showing, the burden shifts back to the plaintiff to rebut the employer's evidence by demonstrating that the employer's purported non-retaliatory reasons were not its true reasons, but were pretext for discrimination." *Id.*

NCDOJ had legitimate non-discriminatory or non-retaliatory reasons for its actions. NCDOJ asked a Paralegal II to perform tasks and responsibilities expected of a Paralegal II; and its review of Plaintiff's position did not show inequities in her pay or job classification. (D.E. 14) As stated above, the prima facie case is rebutted when an employer provides a legitimate, non-discriminatory or non-retaliatory explanation. Assuming there is a prima face case, and there is not, Plaintiff must show pretext regarding DOJ's legitimate explanations. Plaintiff has not brought forth evidence of pretext.

If Plaintiff contends there is a comparator, Plaintiff must show that a comparator is similar in all relevant aspects including supervision by the same person. *Heyward v. Monroe*, No. 97-2430, 1998 U.S. App. LEXIS 30855 (4th Cir. Dec. 7, 1998) (unpublished). Plaintiff has alleged a white paralegal named Pamela Norton received a pay raise in November 2014, while Plaintiff did not receive a pay raise. (*See* Amended Compl. ¶43, 51) However, Norton is not a comparator because she worked in a different section and in a different job with a different supervisor. (Pl. Dep. pp. 69-70) Moreover, after the pay increase, Plaintiff's salary was still higher than Norton's salary. (Bierline Aff.)

In fact, Plaintiff was one of three paralegals in the Human Services Section in 2014. (D.E. 30; Durham Aff.) The other two paralegals were Bonanza, white male, and James, white female.

James works "off campus" at the Debt Referral Office and Bonanza shared a workspace with Plaintiff at NCDOJ. (Pl. Dep. p. 72) Both of these individuals were her comparators. However, Bonanza (Paralegal II) and James (Paralegal I) did not receive pay increases in 2014 other than a $1,000 legislative increase that was provided to Bonanza, James, and Plaintiff effective July 1, 2014. (Bierline Aff.)

In addition to there not being a comparator, NCDOJ's Human Resources completed the audit of Plaintiffs' Paralegal II position and did not find inequities in her pay or job classification. (D.E. 14; Pl. Dep. p. 97)

Moreover, on October 27, 2017, Plaintiff received notice the Paralegal II classification was receiving a pay increase, and the Office of State Human Resources determined the Paralegal II classification for all state employees had a pay rate below the rate of pay for similar jobs in the general job market. (D.E. 22; Pl. Dep. 119) As a result, Plaintiff received a pay increase effective August 1, 2017. (D.E. 22)

## CONCLUSION

For the foregoing reasons, NCDOJ respectfully requests that this Court grant its motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure and enter judgment for Defendant.

Respectfully submitted this the 28th day of February, 2019.

JOSHUA H. STEIN
Attorney General

*/s/ Jason R. Rosser*
Jason R. Rosser
Assistant Attorney General
North Carolina State Bar No. 37753
North Carolina Department of Justice
P.O. Box 629
Raleigh, NC 27602

23

Telephone: (919) 716-6370
Facsimile:  (919) 716-6710
Email: jrosser@ncdoj.gov

## CERTIFICATE OF SERVICE

This is to certify that the undersigned has this day electronically filed the foregoing **MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** using the CM/ECF system, which will send notification of such filing to all counsel of record and I hereby certify that I have mailed the document to the following non CM/ECF participates:

> Robin Johnson
> Pro Se Plaintiff
> 3713 Greywood Drive
> Raleigh, NC 27604

This the 28th day of February, 2019.

> */s/ Jason R. Rosser*
> Jason R. Rosser
> Assistant Attorney General