IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:16-CV-679-FL

| | | |
|---|---|---|
| ROBIN JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| THE NORTH CAROLINA DEPARTMENT | ) | |
| OF JUSTICE, ATTORNEY GENERAL'S | ) | |
| OFFICE, ADMINISTRATION DIVISION, | ) | |
| HUMAN SERVICES SECTION, | ) | |
| | ) | |
| Defendant. | ) | |

This matter comes before the court on plaintiff's motion for summary judgment (DE 55), defendant's motion for summary judgment (DE 57), plaintiff's motion to amend her motion for summary judgment (DE 64), defendant's motion to strike plaintiff's memorandum and supporting evidence (DE 69), and plaintiff's motion to seal (DE 74). The issues raised are ripe for ruling. For the reasons that follow, plaintiff's motion for summary judgment is denied, defendant's motion for summary judgment is granted. Plaintiff's motion to amend and defendant's motion to strike are denied as moot. Plaintiff's motion to seal is granted.

### STATEMENT OF THE CASE

Plaintiff, proceeding pro se, commenced this action July 15, 2016, pursuant to Title VII of the Civil Rights of 1964 ("Title VII"), asserting claims of race discrimination, hostile work environment, and retaliation based upon plaintiff's filing a charge complaining of same with the United States Equal Employment Opportunity Commission ("EEOC"). On August 15, 2017, the

court granted in part and denied in part defendant's motion to dismiss, dismissing all claims except plaintiff's claim of retaliation in violation of Title VII from April 1, 2014, to November 1, 2014.[1] (DE 27). Thereafter the case proceeded through discovery.

On February 28, 2019, the parties filed cross-motions for summary judgment. Plaintiff relies upon various documents including email and other electronic communications between her and her supervisor Josephine Tetteh ("Tetteh"), communications with other employees in the department, her requests for salary adjustment, the proposed update to her job description, documents showing promotions and raises for Tetteh and Pamela Norton ("Norton"), a white paralegal in the department, Equal Employment Opportunity Commission ("EEOC") charges, plaintiff's performance review, defendant's decision regarding salary adjustment, and medical treatment notes indicating that plaintiff experienced anxiety at work. Defendant relies upon several pieces of evidence, including plaintiff's initial offer letter and promotion letter; annual time reports; plaintiff's email to Tetteh on June 4, 2014 requesting updated position description and salary increase, subsequent email correspondence regarding revision of plaintiff's job description and request for salary increase; EEOC filings; affidavits from Kristen Bierline ("Bierline"), defendant's human resources director; Tracey Durham ("Durham"), an employment relations specialist for defendant, and Tetteh; plaintiff's deposition and discovery responses; and the state human resources manual.

On March 13, 2019, plaintiff moved to amend her motion for summary judgment. The motion to amend seeks to bring her motion into compliance with the court's local civil rules by making her statement of material facts a separate document, adding case law, itemizing damages, and adding defendant's answer to plaintiff's second amended complaint as an exhibit. The

---

[1] Plaintiff's motion for summary judgment relies heavily on events outside the scope of her EEOC charge. The court only considers those facts pertinent to plaintiff's retaliation claim.

following week, defendant moved to strike potions of plaintiff's memorandum of law in support of her motion for summary judgment, as well as supporting documents defendant contends are not admissible evidence. Defendant also moved to strike as untimely plaintiff's motion to amend her motion for summary judgment.

On March 21, 2019, plaintiff filed her response in opposition to defendant's motion for summary judgment, relying on additional exhibits including additional various email correspondence between plaintiff and defendant's other employees. Several days later, she filed motion to seal exhibits 22 and 23 of her statement of material facts pursuant to Federal Rule of Civil Procedure 5.2.

**STATEMENT OF UNDISPUTED FACTS**

In 2001, plaintiff was hired as a Paralegal I in the Debt Referral Office of the Human Services Section of defendant's former Administrative Division. (Pl. Dep. (DE 61-29) 98:5–9; Offer Letter (DE 61-2) at 1). In 2006, Richard Slipsky ("Slipsky"), Special Deputy Attorney General of Human Services, promoted plaintiff to Paralegal II in 2006. (Pl. Dep. (DE 61-29) 93:19–20, 137:5–20; Promotion Letter (DE 61-3) at 1). The purpose of the Paralegal II position is to provide support services to defendant's attorneys. (See Final Revised Job Description (DE 61-13); 1998 Job Description (DE 61-11)). For example, plaintiff wrote correspondence on behalf of Slipsky. (Pl. Dep. (DE 61-29) 50:17–51:19). She also helped June Ferrell ("Ferrell") and other attorneys with their briefs. (Pl. Dep. (DE 61-29) 82:5–9). In addition, she helped compile information from hours worked from attorneys in the Health and Human Services Section for the General Assembly. (Pl. Dep. (DE 61-29) 49:2–5).

On December 16, 2013, plaintiff filed her first charge of discrimination based on race and sex again defendant with the EEOC. (Pl. Dep. (DE 61-29) 144:19–24, 145:3–6, 19–21; First EEOC

Charge (DE 61-20) at 1). In March 2014, Slipsky assigned Tetteh as plaintiff's new direct supervisor. (Pl. Dep. (DE 17:11–12, 99:19–25, 134:15–24). On May 30, 2014, plaintiff requested a copy of her job description that was on file with the department, but was told that the only position description was from 1998 and therefore too old to use. (Pl. Dep. (DE 61-29) 143:6–18; May 30, 2014 Email Correspondence (DE 61-19) at 1). Plaintiff responded "I would like to complete a more up to date one." (May 30, 2014 Email Correspondence (DE 61-19) at 1). On June 4, 2014, plaintiff requested a revision to the Paralegal II job description, and claimed that her current duties required a reclassification and pay raise. (Pl. Dep. (DE 61-29) 139:11–140:11; June 4, 2014 Email Correspondence (DE 61-7) at 1). Attached to the email was a list of duties plaintiff allegedly had been performing for years that plaintiff wanted incorporated into a new job description. (Pl. Dep. (DE 61-29) 140:25–141:6; Job Description Proposed Changes (DE 61-15) at 1–2). The list indicated several duties that plaintiff "ha[d] been performing since January 2006." (Job Description Proposed Changes (DE 61-15) at 1–2). The day after plaintiff's request, Slipsky asked Human Resources to evaluate plaintiff's position and whether her salary is consistent with defendant's other paralegals with similar duties. (Durham Aff. ¶ 5; June 5, 2014 Memorandum (DE 61-22) at 1).

On July 1, 2014, Tetteh provided plaintiff with a revised proposed job description executed by Slipsky but not executed by plaintiff. (Pl. Dep. (DE 61-29) 38:13, 38:24–39:4; Revised Proposed Job Description (DE 61-12, 73-7) at 7). Two days later, plaintiff wrote back to Tetteh, asserting that language that she was responsible for providing support to section attorneys and other attorneys in the Administrative Division as needed was an "outrageous change in responsibilities" and retaliation for filing her EEOC charge. (Pl. Dep. (DE 61-29) 141:9–21; July 7, 2014 Email Correspondence (DE 61-16) at 1–2)). Plaintiff also commented that the proposed job description was wrong for debt

4

collection activities because she did not assist in debt collection efforts, but rather the attorneys assist her. (July 7, 2014 Email Correspondence (DE 61-16) at 1–2)). After receiving plaintiff's email, Tetteh responded that it was very important to her that she sit down with plaintiff and resolve plaintiff's concerns. (July 7, 2014 Email Correspondence (DE 61-16) at 1–2)).

Following the email exchange, plaintiff met with Tetteh and Mari Marsh ("Marsh") from human resources to address plaintiff's concerns with her job description. (Pl. Dep. (DE 61-29) 65:6–7, 66:14–67:15). In plaintiff's final job description, defendant removed the language requesting plaintiff provide support as needed to attorneys in the Administrative Division. (Pl. Dep. (DE 61-29) 41:21–42:14; Final Revised Job Description (DE 61-13)). The job description was executed by Slipsky and plaintiff on October 13, 2014. (See Final Revised Job Description (DE 61-13)).

After plaintiff's job description was approved, Tetteh met with plaintiff on October 28, 2014, to discuss errors in a criminal brief, but did not discipline plaintiff. (Tetteh Aff. (DE 61-27) ¶ 5; October 28, 2014 Memorandum (DE 61-23) at 1). In a letter dated February 20, 2015, defendant's Human Resources staff informed plaintiff that they found no inequities in her pay or job classification. (Pl. Dep. (DE 61-29) 97:13–18; Feb. 20, 2015 Letter (DE 61-6) at 1).

In the meantime, the EEOC issued a right to sue letter for plaintiff's first charge of discrimination on December 5, 2014. (First Right to Sue Letter (DE 61-24) at 1). That same day, plaintiff filed a second charge of discrimination, with the charge alleging retaliation from April 1, 2014 to November 1, 2014. (Second EEOC Charge (DE 61-21) at 1). Plaintiff was never given a written warning, suspended without pay, demoted, or given a below expectations performance review. (Pl. Dep. (DE 61-29) 92:5–24, 109:12–110:6, 134:6–14).

5

On March 31, 2016, the EEOC issued a notice of determination for no cause for plaintiff's second EEOC charge. (EEOC Notice of Determination (DE 61-28) at 1). On October 27, 2017, Plaintiff received notice the Paralegal II classification was receiving a pay increase, and the classification had a pay rate below the rate of pay for similar jobs in the general job market. (Pl. Dep. (DE 61-29) 119:4–16). As of the dispositive motion deadline in this case, plaintiff remains employed as a Paralegal II in defendant's Human Services Section of the Health and Human Services Division. (Pl. Dep. (DE 61-29) 11:20–22).

## DISCUSSION

A.  Summary Judgment

1.  Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Once the moving party has met its burden, the non-moving party must then "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (internal quotation omitted). Only disputes between the parties over facts that might affect the outcome of the case properly preclude the entry of summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only

if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party).

"[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's] favor." Id. at 255; see United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").

Nevertheless, "permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the [factfinder] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin-Williams Co., 681 F.2d 230, 241 (4th Cir. 1982) (quotations omitted). Thus, judgment as a matter of law is warranted where "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005). By contrast, when "the evidence as a whole is susceptible of more than one reasonable inference, a [triable] issue is created," and judgment as a matter of law should be denied. Id. at 489-90.

2. Analysis

Title VII makes it unlawful "for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter . . . ." 42 U.S.C. § 2000e-3(a). Plaintiff may prove retaliation "either through direct and indirect evidence of retaliatory animus" or through the burden shifting framework articulated by McDonnell

Douglas Corp. v. Green, 411 U.S. 792 (1973)." Foster v. Univ. of Maryland-E. Shore, 787 F.3d 243, 249 (4th Cir. 2015). "The elements of a prima facie retaliation claim under Title VII are: (1) engagement in a protected activity; (2) adverse employment action; and (3) a causal link between the protected activity and the employment action." Coleman v. Maryland Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010).

"The requirement of an adverse employment action seeks to differentiate those harms that work a significant detriment on employees from those that are relatively insubstantial or trivial." Adams v. Anne Arundel Cty. Pub. Sch., 789 F.3d 422, 431 (4th Cir. 2015). For purposes of a Title VII retaliation claim, an adverse employment action is any "materially adverse" action. Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006). A "materially adverse" action is one that would "dissuade[] a reasonable worker from making or supporting a charge of discrimination." Id. (internal citations omitted). "[A]lthough an adverse action need not affect the terms and conditions of employment, there must be some direct or indirect impact on an individual's employment as opposed to harms immaterially related to it." Ray v. Int'l Paper Co., 909 F.3d 661, 670 (4th Cir. 2018) (internal quotations and citations omitted); see White, 548 U.S. at 68 ("[N]ormally petty slights, minor annoyances, and simple lack of good manners" are not adverse actions."); Adams, 789 F.3d at 431 ("[R]eprimands and poor performance evaluations occur with some frequency in the workplace.").

"An employee may establish prima facie causation simply by showing that (1) the employer either understood or should have understood the employee to be engaged in protected activity and (2) the employer took adverse action against the employee soon after becoming aware of such activity." Strothers v. City of Laurel, Maryland, 895 F.3d 317, 335–36 (4th Cir. 2018) (internal

8

citation omitted). The "temporal proximity must be very close." See Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 273–74 (2001) (citing cases from the Tenth and Seventh Circuits for the proposition that 3 and 4–month periods, respectively, were too long to establish a causal link).

Here, plaintiff fails to allege an adverse employment action. After filing her first EEOC charge, plaintiff was never given a written warning, suspended without pay, demoted, or given a below expectations performance review.[2] (Pl. Dep. (DE 61-29) 92:5–24, 109:12–110:6, 134:6–14). Plaintiff, not defendant, initiated the process of changing her job description and requesting a salary increase. (June 4, 2014 Email Correspondence (DE 61-7) at 1). The day after plaintiff requested an increase in salary, Slipsky asked defendant's human resources department to "ensure that [plaintiff's] salary is consistent with other DOJ paralegals with similar duties in the department." (Slipsky June 5, 2014 Memorandum (DE 61-22) at 1; June 4, 2014 Email Correspondence (DE 61-7) at 1).

Defendant sent plaintiff a job description she did not like, and plaintiff responded that she believed that reference to supporting attorneys in the administrative division on an as needed outrageously expanded her duties and was inappropriate retaliation for filing her first EEOC charge. (See Pl. Dep. (DE 61-29) 38:13, 38:24–39:4, 141:9–21; Revised Proposed Job Description (DE 61-12, 73-7); July 7, 2014 Email Correspondence (DE 61-16) at 1–2)). Defendant's response was to consult with plaintiff, and ultimately remove the language she considered to be retaliatory from the job description finally agreed upon by the parties. (See Pl. Dep. (DE 61-29) 41:21–42:14, 65:6–7,

---

[2] Even if plaintiff was given a verbal reprimand or her job performance was otherwise questioned by Tetteh as she asserts, such reprimands are insufficient to constitute retaliation. See White, 548 U.S. at 68; Adams, 789 F.3d at 431; (Pl. Brief (DE 56) at 9). Plaintiff also claims that Tetteh gave her a negative reference to Phillip Woods ("Woods") when she applied to work in another position, but the information she has provided in support of summary judgment fails to substantiate her claim of an adverse employment action causally connected to her first EEOC charge. (See Pl. Brief (DE 56) at 10–11 (citing Email Correspondence (DE 56-22, 56-23, 56-24, 56-25)).

9

66:14–67:15; July 7, 2014 Email Correspondence (DE 61-16) at 1–2); Final Revised Job Description (DE 61-13)). Only after coming to an agreement as to plaintiff's job description did defendant reach a determination as to whether plaintiff's requested salary increase was warranted. (Pl. Dep. (DE 61-29) 97:13–18; Feb. 20, 2015 Letter (DE 61-6) at 1). Under such circumstances, no reasonable employee would be dissuaded from making or supporting an EEOC charge.

Moreover, plaintiff fails to show that her purported additional duties bear a causal connection to her first EEOC charge. In the instant case, plaintiff filed her first EEOC charge on December 16, 2013. (EEOC Charge (DE 61-20) at 1). In her initial email listing purported "additional duties" she was required to perform, plaintiff identified at the outset that all duties but two were assigned before her first EEOC charge was ever filed. (See Job Description Proposed Changes (DE 61-15) at 1). The remaining two duties, which included handling materials from the Debt Referral Office and assisting an attorney with a criminal appellate brief, were supposedly assigned by Tetteh in April 2014 and May 29, 2014.[3] (See Job Description Proposed Changes (DE 61-15) at 1). Defendant did not refuse to give plaintiff a pay increase until February 2015, almost fifteen months after her EEOC charge was filed. (Gibson February 20, 2015 Memorandum (DE 61-6) at 1; Second EEOC Charge (DE 61-21) at 1). Thus, plaintiff fails to show that her "additional duties" or defendant's decision to refuse to give her a salary increase were causally connected to filing her first EEOC charge. See Clark Cty., 532 U.S. at 273–74.

Plaintiff highlights the weakness of her case by arguing that "she had been given additional

---

[3] Plaintiff testified in her deposition that she had previously helped prepare briefs for other attorneys and assisted with Debt Referral Office matters at various points, suggesting that her duties were not in fact "additional duties," but duties that had been asked of her at various points in the past unrelated to the EEOC charge. (See Pl. Dep. (DE 61-29) 23:5–11, 33:7–11, 82:3–9). Nonetheless, the court construes plaintiff's testimony in her favor and considers these duties to be additional duties.

duties for several years and had asked for pay increases but never received one." (Pl. Brief (DE 56) at 8; Pl. Resp. (DE 71) at 4). Plaintiff's own argument defeats her claim that denials of a pay increase or assignment of additional duties were causally connected to her EEOC charge filed December 16, 2013. Accordingly, defendant is entitled to summary judgment on plaintiff's claim of retaliation. For the same reasons, plaintiff's cross-motion for summary judgment is denied. Plaintiff's motion to amend her motion for summary judgment and defendant's motion to strike plaintiff's memorandum and supporting evidence are denied as moot.

B. Plaintiff's Motion to Seal (DE 74)

Plaintiff moves to seal exhibits 22 and 23 in her opposing statement of material facts. Where plaintiff's exhibits contain sensitive personal information identified under Federal Rule of Civil Procedure 5.2, and where plaintiff has provided redacted versions of the same for the public record, plaintiff's motion to seal is granted.

## CONCLUSION

Based upon the foregoing, plaintiff's motion for summary judgment (DE 55) is DENIED. Defendant's motion for summary judgment (DE 57) is GRANTED. Plaintiff's motion to amend her motion for summary judgment (DE 64) and defendant's motion to strike plaintiff's memorandum and supporting evidence (DE 69) are DENIED AS MOOT. Plaintiff's motion to seal (DE 74) is GRANTED. The clerk is DIRECTED to close this case.

SO ORDERED, this the 5th day of September, 2019.

_____
LOUISE W. FLANAGAN
United States District Judge